IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUONG BINH KY,

    Petitioner,                              No. CIV S-02-2447 GEB DAD P

    vs.

MICHAEL J. YARBROUGH, et al.,

    Respondents.                        FINDINGS & RECOMMENDATIONS

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered on September 22, 2000 in the Sacramento County Superior Court on charges of receiving stolen property, possession of a blank check with intent to defraud, possession of another's ATM card with intent to defraud, identity theft, driving under the influence, and driving with a blood alcohol level in excess of 0.08. He seeks relief on the grounds that: (1) his right to due process was violated when the trial court allowed the introduction of evidence at trial obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966); and (2) the trial court erred in denying his requests for substitute counsel. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

1

PROCEDURAL BACKGROUND

On March 16, 2000, an amended information was filed in Sacramento County Superior Court charging petitioner with receiving stolen property, in violation of Cal. Penal Code § 496(a) (count I); possession of a blank check with intent to defraud, in violation of Cal. Penal Code § 475(b) (counts II and IV); possession of another's ATM card with intent to defraud, in violation of Cal. Penal Code § 484e(d) (counts III, V and VI); identity theft, in violation of Cal. Penal. Code § 530.5(a) (count VII); driving under the influence, in violation of Cal. Veh. Code § 23152(a) (count VIII); and driving with a blood-alcohol level in excess of 0.08, in violation of Cal. Veh. Code § 23152(b) (count IX.) (Clerk's Transcript on Appeal (CT) at 109-12.) The amended information also alleged that petitioner had previously been convicted of one prior serious felony, within the meaning of California's Three Strikes Law. (Id. at 111.) On August 24, 2000, a jury found petitioner guilty of all charges and found true the prior conviction allegation. (Id. at 254-58.) On September 22, 2000, petitioner was sentenced to an aggregate term in state prison of six years. (Id. at 321.)

On April 23, 2001, petitioner filed an appeal of his conviction. (Answer, Ex. A.) The California Court of Appeal for the Third Appellate District affirmed petitioner's conviction in an unpublished decision dated November 8, 2001. (Answer, Ex. B.) On November 26, 2001, petitioner filed a petition for review in the California Supreme Court. (Answer, Ex. C.) That petition was summarily denied by order dated January 16, 2002. (Id.)

On March 11, 2002, petitioner filed a petition for writ of habeas corpus in this court, in case No. CIV S-02-0514 GEB DAD P.[1] On June 11, 2002, that petition was dismissed without prejudice for failure to exhaust state court remedies with respect to one of the claims raised therein. On March 15, 2002, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court. (Answer, Ex. D.) That petition was denied by order dated

---

[1] See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

1  April 4, 2002.  (Id.)  On June 3, 2002, petitioner filed a petition for writ of habeas corpus in the

2  California Court of Appeal.  (Answer, Ex. E.)  That petition was summarily denied on June 6,

3  2002.  (Id.)  On June 24, 2002, petitioner filed a petition for writ of habeas corpus in the

4  California Supreme Court.  (Answer, Ex. F.)  That petition was denied by order dated October

5  16, 2002, with a citation to In re Dixon, 41 Cal. 2d 756 (1953).

FACTUAL BACKGROUND[2]

> Prior to trial, defendant moved to suppress statements to police about a briefcase discovered in the vehicle he was driving.  The parties submitted the motion based on the transcript of the preliminary hearing at which defendant had first raised the issue.  The transcript provides the following relevant factual information.
>
> Officer Gary Malmquist of the Sacramento Police Department stopped defendant's car late one evening.  There was evidence defendant had been drinking, and defendant subsequently failed physical field sobriety tests.  A preliminary blood alcohol breath test of defendant indicated a .12 percent blood alcohol level.
>
> Officer Malmquist took defendant into custody for driving under the influence and placed him in the back of his patrol car.  Police then searched defendant's car.  They found a great deal of evidence, including checks and credit cards.  They also discovered a locked briefcase on the floorboard behind the driver's seat.
>
> Officer Malmquist returned to his patrol car and asked defendant about the briefcase.  Malmquist explained, "I asked him, is that your brown briefcase in the car?  He says, yes.  I said, again, I said, is there anything illegal you know about.  No.  Then he offered to open it."  Defendant opened the briefcase by entering a combination on the lock.  Inside, Malmquist found additional evidence.[3]
>
> The trial court concluded police did not violate defendant's Miranda rights, and the court declined to suppress defendant's statements about the briefcase.  At trial, the People introduced evidence of the briefcase and its contents, including several items connecting defendant to the briefcase.  For example, inside the case

---

[2] The following summary is drawn from the November 8, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-3, filed on February 24, 2003, and attached as Exhibit B to the Answer.

[3] At some point, Malmquist also asked defendant to account for some of the other evidence found in the car, and defendant told Malmquist it was not his car.

> police found a charge card that listed defendant's name as the second name on the card. And police found documents and cards in the name of "Dung H. Doan," matching the alias "Dung Hung Doan" that defendant used.

## ANALYSIS

### I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). See also Henry, 197 F.3d at 1031; Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

II. Petitioner's Claims

   A.  Miranda Violation

Petitioner's first claim is that the trial court improperly denied his motion to suppress the statement he made to Officer Malmquist admitting ownership of the briefcase. He argues that he was in custody at the time Officer Malmquist questioned him and that he should have been given Miranda warnings prior to being questioned.[4]

The California Court of Appeal concluded that even if the trial court erred in refusing to suppress the statement petitioner made to Officer Malmquist admitting ownership of the briefcase, the error was "harmless beyond a reasonable doubt." (Opinion at 4.) The appellate court explained:

/////

---

[4] In Miranda v. Arizona, the Supreme Court established the rule that, during a custodial interrogation, an accused:

> ... must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. 436, 478-79 (1966).

> We conclude any error in admitting the statements was harmless beyond a reasonable doubt. (People v. Johnson (1993) 6 Cal.4th 1, 32-33 [evaluating Miranda error under the harmless beyond a reasonable doubt standard].)  The trial record provides ample evidence of defendant's possession and control over the briefcase, independent of his statements to police.  Not only was the briefcase discovered in a car defendant had been driving and in close proximity to the driver's seat, but the case contained cards and documents identifying defendant by his own name or by an alias he used.[5]

(Id.)

An error by a state trial court in admitting into evidence statements taken in violation of Miranda is subject to a harmless error analysis. Arnold v. Runnels, 421 F.3d 859, 867 (9th Cir. 2005); Juan H. v. Allen, 408 F.3d 1262, 1271 n.9 (9th Cir. 2005).  Under that analysis, a writ of habeas corpus will issue only if the error "had substantial and injurious effect or influence in determining the ⋯ verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). See also Penry v. Johnson, 532 U.S. 782, 795 (2001).  In addition, in order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error. Inthavong v. LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005).  Both of these tests must be satisfied before relief can be granted. Id. at 1061.

Assuming arguendo that the state trial court committed error in allowing petitioner's statement admitting ownership of the briefcase into evidence, the undersigned concludes that the state appellate court was not objectively unreasonable in determining that any such error was harmless. (See Answer, Ex. B at 4.)  Under the circumstances of this case,

---

[5] In this appeal, defendant does not claim the briefcase or its contents should have been suppressed.  In fact, this physical evidence was admissible even if it was the fruit of a Miranda violation, provided defendant's statements were not coerced. (People v. Brewer (2000) 81 Cal. App. 4th 442, 454-455.)

petitioner's statement could not have had a substantial and injurious effect on the jury verdict.  In this regard, the evidence at petitioner's trial showed that the briefcase was located behind the driver's seat in a car driven by petitioner and that petitioner was able to open the case using the combination lock.  The briefcase contained cards and documents identifying petitioner by his name or by his alias.  Even if petitioner's statement was obtained in violation of Miranda, neither the briefcase nor its contents could have been excluded from evidence on the theory that they were the tainted fruit of the Miranda violation.  There is no evidence before this court, and petitioner does not argue, that he was coerced into admitting that he owned the briefcase.  Rather, petitioner voluntarily answered the officer's question regarding ownership of the briefcase.  Therefore, there was no basis to suppress the briefcase or its contents and they were properly admitted into evidence.  See United States v. Patane, 542 U.S. 630, 642-44 (2004) (concluding that Miranda does not require suppression of physical evidence discovered as fruit of a defendant's unwarned, yet voluntary, statements); United States v. Paredes, 388 F.Supp.2d 1185, 1199, n.15 (D. Hawaii 2005).

Under the circumstances presented here, where the briefcase and its contents were clearly under petitioner's control and easily accessible by him, and where the contents of the briefcase contained independent evidence of petitioner's ownership, petitioner's statement to officer Malmquist admitting that he owned the briefcase was superfluous, largely irrelevant and could not have had a substantial and injurious effect on the jury verdict.  Brecht, 507 U.S. at 637.  Accordingly, petitioner is not entitled to habeas corpus relief on this claim.  Inthavong, 420 F.3d at 1062.

B.  Marsden Motions

Petitioner claims that his due process rights were violated when the trial court denied his repeated requests for substitute trial counsel.  Petitioner represents that he informed the trial court he lacked confidence in his trial counsel and that there was a "total breakdown in communications between trial counsel and his client." (Pet. at consecutive p. 10.)  Petitioner

states that his difficulties with his trial counsel resulted in speculation by the trial court that petitioner was attempting to manipulate the proceedings and that, in turn, eventually led to petitioner's exclusion from his own trial. (Id.)

This claim was raised for the first time in a petition for writ of habeas corpus filed with the Sacramento County Superior Court. (Answer, Ex. D.) Citing In re Dixon, 41 Cal. 2d 756, 759 (1953) and In re Harris, 5 Cal. 4th 813, 829 (1993), the Superior Court denied petitioner relief on this claim on the basis that it "should have been raised with the appellate court at the time he filed his appeal." (Id.) The California Supreme Court rejected the same claim with a citation to Dixon.[6] (Answer, Ex. F.) Respondent argues that the Supreme Court's ruling constitutes a state procedural bar precluding this court from considering the merits of petitioner's Marsden claim.

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)); Bennett v. Mueller, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).

/////

---

[6] The decision in In re Dixon set forth the general rule under California law that habeas corpus cannot serve as the substitute for an appeal. Id., 41 Cal. 2d at 759.

8

1    Procedural default is an affirmative defense, and the state has the burden of
2 showing that the default constitutes an adequate and independent ground. Insyxiengmay v.
3 Morgan, 403 F.3d 657, 665-66 (9th Cir. 2005); Bennett, 322 F.3d at 585-86. Once the state has
4 adequately pled the existence of an independent and adequate state procedural ground as an
5 affirmative defense, the burden to place that defense in issue shifts to the petitioner. Bennett,
6 322 F.3d at 585-86. If the petitioner does so, the ultimate burden shifts back to the state. Id.
7 Thus, "it is the law of this circuit that the ultimate burden is on the state, not the petitioner, to
8 show that a procedural state bar was clear, consistently applied, and well-established at the time
9 the party contesting its use failed to comply with the rule in question." Insyxiengmay, 403 F.3d
10 at 666. Even if the state rule is independent and adequate, the claims may be heard if the
11 petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged
12 violation of federal law; or (2) that failure to consider the claims will result in a fundamental
13 miscarriage of justice. Coleman, 501 U.S. at 749-50.
14    Petitioner has placed respondent's defense of a procedural bar in issue by denying
15 its applicability. (Traverse at 3-4.) Specifically, petitioner asserts that a fundamental miscarriage
16 of justice would occur if the federal courts do not address his Marsden claim and that his
17 appellate attorney was deficient in failing to raise this claim on direct appeal. (Id.) In this way,
18 petitioner has placed the state's procedural bar defense in issue by denying its applicability in his
19 case. See Bennett, 322 F.3d at 586; Moormann v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005)
20 (attorney error in failing to raise a claim on direct appeal may constitute cause sufficient to
21 overcome a procedural bar). At that point, the burden shifted to respondent. Bennett, 322 F.3d
22 at 586. Although the Dixon bar may be "independent" as applied in this case. See 322 F.3d at
23 581-83.[7] However, respondent has not met, nor even attempted to meet, his burden of

---

[7] The Ninth Circuit has held that Dixon was not firmly established and consistently applied at least prior to 1993 and therefore cannot constitute an independent and adequate state procedural bar prior thereto. See Cooper v. Calderon, 255 F.3d 1104, 1011 (9th Cir. 2001), cert. denied, 537 U.S. 961 (2002); Fields v. Calderon, 125 F.3d 757, 765 (9th Cir. 1997).

demonstrating that the Dixon bar is "adequate," having been regularly and consistently applied in habeas actions post-1993. Id. at 583-86.  Accordingly, the court will address petitioner's Marsden claim on the merits.[8]

The record reflects that the trial court conducted three hearings on petitioner's requests for substitute counsel pursuant to People v. Marsden, 2 Cal. 3d 118 (1970). (Reporter's Transcript on Appeal (RT) at 3-10, 14-16, 25-29.)  Although the transcripts of those hearings have not been provided to the court by the parties, petitioner states that at the hearings he "expressed a lack of confidence in his trial counsel," complained that he and his counsel "were not communicating," and expressed "the surest of all reasons - a total breakdown in communications - between trial counsel and his client."  (Pet. at consecutive p. 10.)  Prior to one of these Marsden hearings, the trial court questioned petitioner on the record about his concerns with his trial counsel.  (RT at 17-24.)  On this occasion defense counsel explained that petitioner did not appear to thoroughly understand the proceedings and the seriousness of the charges and that he and petitioner had experienced poor communication since the beginning of the case.  (Id. at 18-19.)  The trial court judge then asked petitioner a series of questions designed to ascertain whether he had a basic understanding of the proceedings, the charges against him and the possible sentence that he faced if convicted.  (Id. at 19-21.)  Petitioner indicated that he understood all of these things.  (Id.)  The trial court also noted that petitioner had previously pled guilty to a felony offense in another state.  (Id. at 22.)  Petitioner explained that he did not wish to

---

[8] Because the California courts denied petitioner's Marsden claim on procedural grounds, there is no state court decision on the merits of this claim.  When it is clear that a state court has not reached the merits of a petitioner's claim, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (AEDPA standard of review not applicable because state court did not reach the merits of petitioner's perjury claim).  See also Miranda v. Bennett, 322 F.3d 171, 178 (2d Cir. 2003); Neal v. Puckett, 286 F.3d 230, 235 (5th Cir. 2002) (en banc) (defining "adjudication on the merits" to be a substantive, rather than a procedural, decision); Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).  Accordingly, this court will review de novo petitioner's claim that his constitutional rights were violated when the trial court denied his motions for substitute counsel.

10

accept a previous plea offer that had been made to him and that he wanted his trial counsel to "pose the questions that I have given to him to the people who would testify against me." (Id. at 23.) The trial judge explained to petitioner that his trial counsel was not obliged to ask the questions suggested by petitioner, but would ask questions based on his own professional judgment and expertise. (Id. at 24.) Petitioner stated that he understood this. (Id.) Subsequent to this exchange, the trial court recessed in order to conduct a formal Marsden hearing. (Id.) All of petitioner's requests for a substitution of counsel were denied.

During his trial, petitioner again requested substitute counsel and complained that the trial court had denied his requests for substitute counsel on three prior occasions. (Id. at 46.) The trial court informed petitioner that his requests

> [had] been denied three times because each judge apparently, like myself, feels that you are attempting to manipulate the system and are not cooperating with your attorneys and then turn around and complain about them.

(Id. at 46-67.) Indeed, the court found on several occasions that petitioner was deliberately attempting to manipulate the proceedings and his trial counsel. (Id. at 50, 115.) After several more days of trial, petitioner refused to attend court, stating that he wished to proceed with another attorney or not at all. (Id. at 113-19.) Petitioner's trial counsel stated that petitioner was refusing to communicate with him and that he was not "able to establish or maintain an effective attorney/client relationship with him at this point." (Id. at 114.) Petitioner then informed the trial judge that, although his prior reasons for wishing to obtain substitute counsel were not "good," he now wished to change attorneys because his current counsel had not responded to two letters petitioner had sent to him. The trial judge responded:

> Mr. Ky, you have already presented that information to the Court in your previous request. You are apparently going over the same territory again. If you are – think you have grounds now, I suggest to you they are because you have developed them. The Court is convinced from what it has seen of your conduct – and apparently the three doctors that have examined you all came away with the idea that you have a tendency to manipulate, and I believe you're

11

> doing that with your attorney now and have been and you continue to try to do it with this Court and I am not going to accept it.
>
> Now, let me point something out. If you think you're going to frustrate the continued trial by refusing to show up during the course of trial, I am advising you that the case has now been started and we can continue without your presence here because you have a right to be here and if you choose voluntarily not to be present, we can proceed without your appearance.

(Id. at 115.) Petitioner stated that he was not "going to be here." (Id.) After advising petitioner of the potential consequences of his non-attendance, the trial court allowed the trial to continue in petitioner's absence. (Id. at 115-19.)

The Sixth Amendment to the Constitution guarantees the right to the assistance of counsel in a criminal prosecution. Such assistance must be effective and competent. Strickland v. Washington, 466 U.S. 668 (1984). Where a defendant is proceeding with the assistance of counsel, he may move to dismiss or substitute counsel, whether appointed or retained. For purposes of habeas review, the Sixth Amendment requires an appropriate inquiry on the record into the grounds for a motion for substitute counsel, and the matter must be resolved on the merits before the case goes forward. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); see also Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982) ("Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth Amendment.") If failure to conduct the proper inquiry results in the constructive denial of counsel, it constitutes per se error. Schell, 218 F.3d at 1027 ("the basic question is simply whether the conflict between [petitioner] and his attorney prevented effective assistance of counsel").

The undersigned finds that the state trial court made an adequate inquiry into petitioner's complaints regarding his trial counsel and resolved the matter on the merits before proceeding. Although petitioner states that his limited English skills and "lack of understanding of American jurisprudence" prevented him from expressing his complaints "in correct legal terms," (pet. at consecutive p. 10), he does not allege that the trial judge refused to allow him to

12

express his concerns in full or that the trial court did not understand the substance of his complaints.  Further, the record reflects that petitioner was assisted by a court interpreter.  (RT at 1, 11, 17.)  Petitioner's allegations and the trial record reflect that on numerous occasions during the course of the proceedings, the trial court allowed petitioner to fully explain his position regarding his desire for a substitution of counsel on the record.  After many discussions, the trial court concluded that petitioner's reasons for wanting another attorney were manufactured in an attempt to manipulate the trial.  That conclusion is consistent with this court's reading of the record.

Even if the trial court had not conducted an adequate inquiry into petitioner's requests for substitute counsel, the undersigned concludes that petitioner was not denied his Sixth Amendment right to counsel.  The apparent disagreements/breakdown of communications between petitioner and his trial counsel did not prevent effective representation.  Schell, 218 F.3d at 1026 (stating that defendant's constitutional rights are violated where "the conflict between [the client] and his attorney had become so great ... that it resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.").  Although the record reflects that petitioner and his counsel had a challenging and difficult relationship, largely because of petitioner's refusal to cooperate with counsel, the Sixth Amendment only guarantees competent representation, not a meaningful relationship.  Morris v. Slappy, 461 U.S. 1, 13-14 (1983); see also Wheat v. United States, 486 U.S. 153, 159 (1988) ("Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."); Plumlee v. Sue del Papa, 426 F.3d 1095, 1103 (9th Cir. 2005).

A review of this record reflects that counsel did a thorough job of challenging the prosecution's case against petitioner through cross-examination and made a competent closing argument to the jury on behalf of his client. (See RT at 323-34.)  Moreover, some of petitioner's

apparent complaints regarding his counsel were mere differences of opinion over trial strategy, such as what questions to ask trial witnesses, none of which may serve as proper grounds for appointing substitute counsel. See Schell, 218 F.3d at 1026 n.8 (quoting Brookhart v. Janis, 384 U.S. 1, 8 (1966) (Harlan, J., dissenting in part)) ("'[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval.'"). Further, contrary to petitioner's assertion, he was not excluded from his trial; he chose to be absent. In short, petitioner's claimed difficulties with his counsel did not rise to the level of constructive denial of counsel and, in any event, were of his own making. See Schell, 218 F.3d at 1026 ("it may be the case, for example, that because the conflict was of [petitioner's] own making, or arose over decisions that are committed to the judgment of the attorney and not the client, in fact he actually received what the Sixth Amendment required in the case of an indigent defendant").

Because petitioner did not suffer a constructive denial of counsel, he must demonstrate prejudice under Strickland. Schell, 218 F.3d at 1028. He cannot do so. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). Petitioner has made no such showing. Notwithstanding petitioner's reluctance to proceed with his appointed trial attorney and his absence from part of his trial, a review of the state court record reflects that counsel was able to present a professional and adequate defense to the charges against petitioner. Indeed, petitioner does not raise a claim of ineffective assistance of counsel before this court nor does he challenge any particular aspect of his counsel's performance.

The state trial court adequately responded to petitioner's complaints about his trial counsel and, in any event, petitioner cannot show he was denied his Sixth Amendment right to

/////

1  counsel. Schell, 218 F.3d at 1025. Accordingly, no constitutional violation is presented and
2  petitioner is not entitled to relief.
3  For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's
4  application for a writ of habeas corpus be denied.
5  These findings and recommendations are submitted to the United States District
6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty
7  days after being served with these findings and recommendations, any party may file written
8  objections with the court and serve a copy on all parties. Such a document should be captioned
9  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
10 shall be served and filed within ten days after service of the objections. The parties are advised
11 that failure to file objections within the specified time may waive the right to appeal the District
12 Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
13 DATED: March 15, 2006.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

17 DAD:8:ky2447.hc